# UNITED STATES DISTRICT COURT
# FOR THE DISTRCT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ERIC BURKS,<br> Plaintiff | )<br>)<br>)<br>) |  |
| v. | )<br>) | Doc. No. _____ |
| CITY OF BOSTON,<br>WILLIAM SOLBERG, and<br>CITY OF BOSTON DOE DEFENDANTS 1-10 | )<br>)<br>)<br>) |  |

# VERIFIED COMPLAINT

# INTRODUCTION

1. This is a civil rights action seeking declaratory relief, injunctive relief and compensatory and punitive damages as a result of (1) the wrongful and illegal entry upon and into the Plaintiff's home (2) the issuance of an unlawful and illegal violation notice (the "Violation Notice") alleging violations of the Massachusetts Building Code.

2. The real estate at issue in this case involves Plaintiff's home which is the rear condominium unit of a structure divided into two condominium units, one in the front and one in the rear, located at 31 Iroquois Street, Boston, MA 02120. Plaintiff has no ownership interest in the front condominium unit whatsoever. The rear condominium unit is the Plaintiff's home.

3. Without any basis for believing that Plaintiff (1) owned the front unit and/or (2) was operating a rooming house in the rear unit, the City of Boston, through its agents and employees issued a Violation Notice charging that the Plaintiff (1) changed the usage of the front unit from a two-family unit to a one-family unit and (2) was operating a "rooming house" in the rear unit.

## JURISDICTION AND VENUE

4. This civil rights action is brought pursuant to, inter alia, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 28 U.S.C. §§ 2671, et seq. and other state and federal laws for relief from commission of tortious acts. This Court has jurisdiction over federal claims pursuant to the constitutional provisions enumerated and 28 U.S.C. § 1331 and § 1343 (3) and (4), as they are brought to redress deprivations of rights privileges and immunities secured by the United States Constitution and by law. Jurisdiction is also proper pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. This Court has jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367. Venue is proper in the United States District Court for the District of Massachusetts, under 28 U.S.C. § 1391(b), in that the Plaintiff resides in Boston, Massachusetts and a substantial part of the acts and/or omissions giving rise to Plaintiff's claim occurred in this district.

## PARTIES

### *Plaintiff Eric Burks*

5. Plaintiff, Eric Burks, is the owner of and resides at 31R Iroquois Street, Boston, Massachusetts 02120 (hereinafter defined as his "Home").

### *Defendant City of Boston*

6. The City of Boston is the municipality seeking enforcement of the illegal violation notice at issue in this case.

### *Defendant William Solberg*

7. Defendant William Solberg is the building inspector and an agent and employee of the City of Boston.

### *Defendants City of Boston Doe Defendants 1-10*

8. In addition to the foregoing Defendants, unknown named City of Boston agents and officials are sued herein in their individual capacities under fictitious names as "City of Boston Doe Defendants 1-10" because their true names, titles, capacities, and/or degree of responsibility for the acts alleged herein are unknown to Plaintiff at this time. When Plaintiff ascertains this information, he will amend this Complaint accordingly. City of Boston Does 1-10 include, but are not limited to, City of Boston Officials and Supervisors, City of Boston Officers, and/or Zoning Enforcement Agents (collectively, the "City of Boston Doe Defendants"). Plaintiff is informed and believes, and thereon alleges, that the City of Boston Doe Defendants are legally liable to Plaintiff in some part for the wrongful acts

and omissions of which Plaintiff complains herein. Defendants City of Boston, Solberg and City of Boston Does 1-10 are hereafter collectively referred to as the "City of Boston Defendants."

9. The City of Boston Defendants are and were at all times mentioned herein acting under color of state law.

10. All of the Defendants acted in bad faith and contrary to established law and principles of constitutional and statutory law.

## FACTS

11. Plaintiff, Eric Burks, is a medical doctor. He is a pathologist and practices his profession at the Lahey Clinic. Doctor Burks serves as a mentor through the Massachusetts Department of Youth Services and makes his Home available for that purpose.

12. The Home at issue in this case is comprised of four levels: (1) the basement area that contains two beds for house guests, (2) the first floor comprised of a common area kitchen, living room and dining room, (3) the second floor containing three bedrooms with one bed in each of two rooms and the third "master bedroom" containing two beds (for a total of four beds on the second floor), and (4) the third floor which is occupied by the owner, Dr. Burks. Currently, three of the four beds on the second floor are rented to unrelated individuals. The fourth bed on the second floor is occupied by an individual for whom Dr. Burks is a mentor through

the Massachusetts Department of Youth Services, discussed infra. All of the occupants live together as a single housekeeping unit and have equal rights and access to the entire dwelling which includes, without limitation, the kitchen, the living room, the dining room and the bathrooms. Only three of the occupants were paying rent at the time of the Violation Notice. It is anticipated that one of the other residents, Rafael, will begin paying rent when he "ages out" (see discussion infra).

### *The Occupants Function as a Single Housekeeping Unit*

13. Plaintiff has been a community partner working with the Massachusetts Department of Youth Services ("DYS") since June of 2009. The Plaintiff provides religious and other services for kids while they are residents in the various treatment programs in Boston. These services range from traditional Bible studies to community coordinated events such as art nights with local artists, basketball game competitions with athletes from Northeastern University, music nights with a local musician, and movie nights. All of these activities are optional for residents and are coordinated and overseen by Plaintiff through various faith based associations. Residents who develop a relationship with Plaintiff and other volunteers are encouraged to continue these relationships once they are released from treatment. This is done through attending church sponsored basketball games and other activities, church services, and one-on-one mentorship. Juvenile offenders continue to be overseen by the DYS until the age of 18 or 21 and part of that mentorship includes working with the juvenile's case worker, attending court

when necessary, and being an advocate for level reviews, job searches, and educational pursuits.

14. For kids who are being successfully mentored but whom their living situation is incompatible with success, the DYS has approved Plaintiff's Home as an option for placement of kids aged 18-21. Aside from Plaintiff's position as a physician at the Lahey Clinic, Plaintiff is on staff with Straight Ahead Ministries which is a non-denominational Christian ministry with over 25-years of experience working with juvenile offenders in Massachusetts and elsewhere. Aside from training and experience, the cost of housing, food, education, etc. is supported through their non-profit charity. Because this ministry is not dependent on DYS funding, kids who do well may continue to live in the Home past the age of 21 in order to fulfill the goal of becoming productive members of society pursing vocational, educational, and spiritual maturity. Outside of a faith based program such as this, there are currently limited resources for kids "ageing-out" of the system to lean on as they achieve these goals.

15. As an example, Plaintiff currently has one young man (Rafael M.) living in the home. He was committed as a youthful offender at the age of 14 until the age of 21 and has completed 3.5 years of treatment for high-level charges. He attended the first Bible study Plaintiff started while he was a resident.

16. Prior to residing with the Plaintiff, Rafael violated his conditions of release while living with his father in Minnesota and was sent back to Boston to be with his

mother. Over a period from August to December of 2011, Rafael was mentored weekly and attended weekly church services. The mentorship led to completion of the requirements for a high-school diploma and ultimately acceptance into Bunker Hill Community College together with federal financial assistance. Because his mother is jobless and lives in the projects in Mattapan, Rafael lived on the couch between his mother and brother's house with continued pressure to sell drugs in order to provide for the financial needs of his family.

17. In January of 2012, Rafael chose to leave that situation to live in Plaintiff's house and pursue his education. He completed his first semester of college with four A's and one B. In addition, over the summer he was hired in a full-time position as a hospital orderly at New England Baptist Hospital (NEBH). He will be continuing on in the fall with part-time school to pursue a degree in sociology while working full-time at NEBH. Rafael's goal is to one day become a counselor for inner city youth and work for the department of youth services.

18. Rafael "ages out" in September of 2012 (i.e. turns 21) but continues to be supervised by juvenile probation until the age of 22. It would be a tragedy to break up a home where he has flourished because the occupants arguably do not meet the traditional definitions of a "family."[i] Both Rafael and his mother recognize that Plaintiff has taken on the role of father in his life and they are happy with the direction that the relationship is taking him. The other individuals in the house are like brothers to him. All of them are take part in the DYS ministry, serving various roles of coordinating art, Bible studies, and basketball.

In addition, they provide tremendous emotional and spiritual support for him and are examples of work ethic (all have full-time jobs) and have either completed college or are working toward that goal.

19. On or about July 17, 2012, during the course of inspecting the duly permitted build out of the basement area, Plaintiff's home was illegally entered into and upon by Defendants. During the inspection of the basement area, an agent or employee of the City of Boston's Inspectional Services Division ("ISD") asked the contractor (Mike McMillan) if he could go upstairs. After viewing the first floor living area, he asked to go into the second floor living area where he asked to go in each individual bedroom including one in which Rafael M.'s roommate (Jordan E.) was in bed sleeping. Last he entered the third floor living area (Dr. Burks' bedroom). He then counted all the beds and informed the contractor that this was a "rooming house" based on the number of beds. The contractor stated that he didn't think it was a rooming house but said he doesn't live there so he didn't know all the details. On July 23, 2012, Mr. McMillan and the Plaintiff went to the ISD to speak with Inspector Solberg to explain the details of the living arrangements but he was not available. On August 7th, 2012 Dr. Burks received by signature the violation notice stating the before mentioned allegations. At no time was either written or verbal consent obtained from the owner or occupants of 31 Iroquois Street for an inspection of the previously occupied portion of the home. At no time did Inspector Solberg seek to ascertain the relationships of the occupants of the Home in making a determination that the Home is a "rooming house."

20. Defendants entry is in violation of their own policies and procedures and is in violation of and contempt of a decree issued by this Court in a matter similar to the case at bar.

21. On January 24, 2005, in the matter of *Sang Vo et. al. v. City of Boston et. al.*, 2005 WL 3627054 (D.Mass.) (Zobel, J), this Court issued a consent decree (the Consent Decree), binding the Defendant City of Boston to certain definitions and procedures. The purpose of the Consent Decree is to, inter alia:

   (a) Allow families and individuals to choose suitable living arrangements in the City of Boston;

   (b) Establish rules for the interpretation and application of the Massachusetts rooming-house statute, M.G.L. c. 140, §22 et. seq., and other applicable lodging house provisions in a manner consistent with federal and state constitutions

   (c) Establish the rules for the conduct of residential housing inspections to enforce statutes and regulations in a manner that: provides for proper notice to affected occupants; provides occupants the opportunity to make informed decisions about whether to consent to an inspection; and respects the privacy of the occupants.

   (d) Provide for reasonable compensatory relief to Plaintiffs.

22. The Consent Decree specifically states that the decree is "intended to benefit occupants and owners of residential housing in the City of Boston in addition to the [Plaintiffs in the Vo case]." Thus, the Consent Decree inures to the Plaintiff benefit in the case at bar.

23. In that regard, the Consent Decree specifically holds, inter alia, that occupants living together as a "single housekeeping" unit shall not constitute a rooming house. Likewise, the Consent Decree specifically holds that unrelated roommates or housemates with equal rights to the entire dwelling, whether under a tenancy-at-will, lease or other permission, shall **not** constitute a "rooming house." (Emphasis supplied)

24. Furthermore, the Consent Decree requires that specific procedures be followed in order to enter the Plaintiff's home, which procedures were egregiously violated in the case at bar.

25. Plaintiff is informed and believes and therefore alleges that each of the Defendants caused, and is liable for the unconstitutional and unlawful conduct and resulting injuries by among other things, personally participating in said conduct or acting jointly with others who did so; by authorizing, acquiescing or setting in motion policies, plans or actions that led to the unlawful conduct; by failing or refusing with deliberate indifference to maintain adequate supervision; and/or by ratifying the unlawful conduct taken by employees under their direction and control.

26. Defendants' actions were taken in violation of their own policies, customs or usages of the City of Boston; and in violation of the Consent Decree.

### FIRST CLAIM FOR RELIEF
### (Negligence)

27. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint.

28. Defendants individually and as agents of the City of Boston breached their duty of reasonable care by negligently acting or failing to act in such a way that resulted in Plaintiff's right of privacy being violated and the issuance of an illegal and unlawful Violation Notice.

29. Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things: failing to ascertain the nature and relationships of the persons residing at 31R Iroquois Street and adhere to, inter alia, the Consent Decree to which the City of Boston was bound by the decree of this Court and other Federal and State law.

30. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### (Violations of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution / The Right of the People to be Secure in their Persons, Houses, Papers and Effects and Due Process) (42 U.S.C. § 1983)

31. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained the preceding paragraphs of this Complaint.

32. Defendants deprived Mr. Plaintiff of his constitutional right to privacy without due process of law as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution by causing and/or participating in the illegal, arbitrary, and capricious entry into and upon his residence and issuance of an illegal Violation Notice.

33. The Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county or municipal laws, ordinances or regulations.

34. The conduct of the Defendants violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

35. The actions, omissions, policies, patterns, practices and customs of these Defendants, complained of herein, were intentional, reckless, and show a callous disregard for, or deliberate indifference to Plaintiff's personal privacy and civil and constitutional rights.

36. These violations are compensable pursuant to 42 U.S.C. § 1983.

37. As a direct and proximate result of these Defendants' Mr. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**(Violations of the Fourteenth Amendment to the United States Constitution / Equal Protection) (42 U.S.C. § 1983)**

38. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint.

39. Defendants acted so as to deny him equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and his liberty by causing or participating in the illegal entry into and upon his residence and issuing an illegal Violation Notice in violation of the Consent Decree issued by this Court to which the Defendants are subject.

40. The Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county or municipal laws, ordinances or regulations.

41. The Defendants acted with the intent or purpose to discriminate against Plaintiff.

42. The conduct of the Defendants violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

43. The acts, omissions, policies, patterns, practices and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Plaintiff's personal privacy and civil and constitutional rights.

44. These violations are compensable pursuant to 42 U.S.C. § 1983.

45. As a direct and proximate result of these Defendants' conduct, Mr. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. For general damages against them jointly and severally, in an amount to be proven at trial;

2. For special damages against them jointly and severally, in an amount to be proven at trial;

3   For punitive and exemplary damages against them in an amount to be proven at trial;

4   For reasonable costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable law;

5   For injunctive and declaratory relief that the Court deems just and proper; and

6   For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues triable by a jury.

> Respectfully Submitted,
> Eric Burks,
> By his Attorney
>
> /s/ Gerald A. Phelps
> _____
> Gerald A. Phelps, BBO # 555307
> LAW OFFICE OF GERALD A. PHELPS
> 11 Lamppost Drive
> Halifax, MA 02338
> (781) 754-0825

---

[i] It is anticipated that when Rafael attains the age of 21 he will begin to pay rent. Thus, at that time, there will be four occupants paying rent and, unless the Court declares the living arrangement in this case to constitute a "single housekeeping unit", the living arrangements may be deemed a lodging house when viewed in light of the definition contained in M.G.L. c. 140, 22.